UNITED STATES FEDERAL DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JOSEPH BRENNAN<br><br>vs.<br><br>THE BLACK & DECKER CORPORATION<br>d/b/a PORTER CABLE CORPORATION,<br>Alias and QUAKER LANE TOOL, INC., alias | ) | CA. NO.: 06-458T |

***AMENDED COMPLAINT***

***COUNT I***

***NEGLIGENCE***
***(Porter-Cable)***

1. Plaintiff, Joseph Brennan, is a resident of Block Island, County of Washington, State of Rhode Island.

2. Defendant, The Black & Decker Corporation, d/b/a Porter-Cable Corporation, Alias, (hereinafter "Porter-Cable") is a foreign corporation located at 701 East Joppa Road, Towson, Maryland 21286, doing business in the State of Rhode Island, and is so doing business in the State of Rhode Island and/or at all times relevant hereto had sufficient minimum contacts with the State of Rhode Island so as to be subject to its jurisdiction.

3. Defendant, Quaker Lane Tool, Inc., (hereinafter "Quaker Lane Tools") Alias, is a Rhode Island business, with its principle place of business located at 3520 Quaker Lane in North Kingstown, Rhode Island, but, also with a business listed at 1 Spuchy Drive in Westerly, Rhode Island and is so doing business in the State of Rhode Island, and/or at all times relevant hereto had sufficient minimum contacts with the State of Rhode Island so as to be subject to its jurisdiction.

4. In or about 2005, between June and September, Defendant, Quaker Lane Tools sold a Porter-Cable MAG-Saw Circular Saw to Plaintiff, Joseph Brennan at its Westerly branch.

5. On or about December 30, 2005, Plaintiff, Joseph Brennan owned a Porter-Cable MAG-Saw Circular Saw (hereinafter "the saw") manufactured by Porter-Cable, Alias, that he had purchased and was using in the State of Rhode Island.

6. On or about December 30, 2005, while operating the saw, the lower guard stuck exposing the saw blade and causing partial amputation to the left index finger of the Plaintiff, Joseph Brennan, as well as other injuries.

7. At all times relevant hereto, Plaintiff, Joseph Brennan, was in the exercise of due care and caution.

8. Porter-Cable is the manufacturer of the circular saw owned by the Plaintiff.

9. Porter-Cable, Alias, has a duty to manufacture a product that is not unsafe, dangerous and/or defective.

10. Porter-Cable's circular saw has a lower guard.

11. Such lower guard is made to protect the operator from coming into contact with the saw blade.

12. The lower guard blade failed to engage and caused the partial amputation to the Plaintiff.

13. Such failure renders the saw, as manufactured and designed, to be defective, dangerous and unsafe for use as intended.

14. On or about November 29, 2005, Porter-Cable recalled such circular saw due to the sticking of the lower guard and exposing the rotating saw blade.

15. It was upon this exposed saw blade that the Porter-Cable circular saw cut Plaintiff, Joseph Brennan, causing the partial amputation to his left index finger.

16. On all relevant times hereto the saw had a dangerously sharp blade that when properly functioning, was protected by the lower guard.

17. The aforementioned failure of the saw and resulting damages were a direct and proximate result of the negligence, carelessness and negligent omissions of Porter-Cable in:

   a. designing, manufacturing, selling and/or otherwise placing into the stream of commerce a saw that was in a defective condition, unreasonably dangerous to consumers, including Joseph Brennan herein;

   b. failing to adequately warn Joseph Brennan of the defects in the saw when Porter-Cable knew or should have known of the defects and that they constituted a danger;

   c. carelessly, recklessly and negligently designing, manufacturing, distributing and selling the saw in a defective and unreasonably dangerous condition;

d. carelessly, recklessly and negligently failing to adequately, properly and safely inspect and/or test the saw and to make the necessary corrections and adjustments thereto, which inspections and tests would have revealed the existence of the aforesaid dangerous condition, and which adjustments and/or corrections would have remedied same;

e. carelessly, recklessly and negligently failing to discover defects in the saw;

f. carelessly, recklessly and negligently failing to exercise the requisite degree of care and caution in the design, manufacture, distribution and sale of the saw;

g. carelessly, recklessly and negligently failing to properly and adequately design and manufacture the saw in order to provide a safe product;

h. carelessly, recklessly and negligently failing to adequately, properly and/or completely supervise its personnel in the design, manufacture, distribution and sale of the saw; and

i. carelessly, recklessly and negligently failing to remove the saw from the market when the defendant knew or should have known of the defects in the water dispenser and that they constituted a danger;

18. As a direct and proximate result of Porter-Cable's designing, manufacturing, distributing and selling a product that was in a defective, unreasonably dangerous condition, the injury and damages referred to above occurred.

## ***COUNT II***

## BREACH OF EXPRESS WARRANTY (Porter-Cable)

19. Paragraphs 1 through 18 above are fully incorporated by reference each and every allegation set above as though the same were fully set forth herein at length.

20. Porter-Cable by virtue of advertisements, promotional literature, and/or sales brochures, made certain express warranties to the general public, and to Joseph Brennan, in particular, that the saw was safe and free from defects.

21. Porter-Cable breached its express warranties in:

a. designing, manufacturing, selling and/or otherwise placing into the stream of commerce a saw that was in a defective condition, unreasonably dangerous to consumers, including Joseph Brennan herein;

b. failing to adequately warn Joseph Brennan of the defects in the saw when Porter-Cable knew or should have known of the defects and that they constituted a danger;

c. carelessly, recklessly and negligently designing, manufacturing, distributing and selling the saw in a defective and unreasonably dangerous condition;

d. carelessly, recklessly and negligently failing to adequately, properly and safely inspect and/or test the saw and to make the necessary corrections and adjustments thereto, which inspections and tests would have revealed the existence of the aforesaid dangerous condition, and which adjustments and/or corrections would have remedied same;

e. carelessly, recklessly and negligently failing to discover defects in the saw;

f. carelessly, recklessly and negligently failing to exercise the requisite degree of care and caution in the design, manufacture, distribution and sale of the saw;

g. carelessly, recklessly and negligently failing to properly and adequately design and manufacture the saw in order to provide a safe product;

h. carelessly, recklessly and negligently failing to adequately, properly and/or completely supervise its personnel in the design, manufacture, distribution and sale of the saw; and

i. carelessly, recklessly and negligently failing to remove the saw from the market when the defendant knew or should have known of the defects in the saw and that they constituted a danger;

22. As a direct and proximate result of Porter-Cable's breach of its express warranties by designing, manufacturing and selling a product that was in a defective, unreasonably dangerous condition, the injury and damages referred to above occurred.

**COUNT III**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (Porter-Cable)**

23. Paragraphs 1 through 22 above are fully incorporated by reference each and every allegation set above as though the same were fully set forth herein at length.

24. Porter-Cable impliedly warranted that the saw was of merchantable quality.

25. Porter-Cable breached its implied warranty of merchantability in:

a. designing, manufacturing, selling and/or otherwise placing into the stream of commerce a saw that was in a defective condition, unreasonably dangerous to consumers, including Joseph Brennan herein;

b. failing to adequately warn Joseph Brennan of the defects in the saw when Porter-Cable knew or should have known of the defects and that they constituted a danger;

c. carelessly, recklessly and negligently designing, manufacturing, distributing and selling the saw in a defective and unreasonably dangerous condition;

d. carelessly, recklessly and negligently failing to adequately, properly and safely inspect and/or test the saw and to make the necessary corrections and adjustments thereto, which inspections and tests would have revealed the existence of the aforesaid dangerous condition, and which adjustments and/or corrections would have remedied same;

e. carelessly, recklessly and negligently failing to discover defects in the saw;

f. carelessly, recklessly and negligently failing to exercise the requisite degree of care and caution in the design, manufacture, distribution and sale of the saw;

g. carelessly, recklessly and negligently failing to properly and adequately design and manufacture the saw in order to provide a safe product;

h. carelessly, recklessly and negligently failing to adequately, properly and/or completely supervise its personnel in the design, manufacture, distribution and sale of the saw; and

i. carelessly, recklessly and negligently failing to remove the saw from the market when the defendant knew or should have known of the defects in the saw and that they constituted a danger;

26. As a direct and proximate result of Porter-Cable's breach of its implied warranty of merchantability by designing, manufacturing and selling a product that was in a defective, unreasonably dangerous condition, the injury and damages referred to above occurred.

## COUNT IV

## NEGLIGENCE
## (Quaker Tool)

27. Paragraphs 1 through 26 above are fully incorporated by reference each and every allegation set above as though the same were fully set forth herein at length.

28. The aforementioned failure of the saw and resulting damages were a direct and proximate result of the negligence, carelessness and negligent omissions of Quaker Tool in:

a. designing, manufacturing, selling and/or otherwise placing into the stream of commerce a saw that was in a defective condition, unreasonably dangerous to consumers, including Joseph Brennan herein;

b. failing to adequately warn Joseph Brennan of the defects in the saw when Quaker Lane knew or should have known of the defects and that they constituted a danger;

c. carelessly, recklessly and negligently designing, manufacturing, distributing and selling the saw in a defective and unreasonably dangerous condition;

d. carelessly, recklessly and negligently failing to adequately, properly and safely inspect and/or test the saw and to make the necessary corrections and adjustments thereto, which inspections and tests would have revealed the existence of the aforesaid dangerous condition, and which adjustments and/or corrections would have remedied same;

e. carelessly, recklessly and negligently failing to discover defects in the saw;

f. carelessly, recklessly and negligently failing to exercise the requisite degree of care and caution in the design, manufacture, distribution and sale of the saw;

g. carelessly, recklessly and negligently failing to properly and adequately design and manufacture the saw in order to provide a safe product;

h. carelessly, recklessly and negligently failing to adequately, properly and/or completely supervise its personnel in the design, manufacture, distribution and sale of the saw; and

i. carelessly, recklessly and negligently failing to remove the saw from the market when the defendant knew or should have known of the defects in the saw and that they constituted a danger;

29. As a direct and proximate result of Quaker Lane's designing, manufacturing, distributing and selling a product that was in a defective, unreasonably dangerous condition, the injury and damages referred to above occurred.

## ***COUNT V***

### *BREACH OF EXPRESS WARRANTY*
### *(Quaker Lane Tool)*

30. Paragraphs 1 through 29 above are fully incorporated by reference each and every allegation set above as though the same were fully set forth herein at length.

31. Quaker Lane, by virtue of advertisements, promotional literature, and/or sales brochures, made certain express warranties to the general public, and to Joseph Brennan in particular, that the saw was safe and free from defects.

32. Quaker Lane breached its express warranties in:

a. designing, manufacturing, selling and/or otherwise placing into the stream of commerce a saw that was in a defective condition, unreasonably dangerous to consumers, including Joseph Brennan herein;

b. failing to adequately warn Joseph Brennan of the defects in the saw when Quaker Lane knew or should have known of the defects and that they constituted a danger;

c. carelessly, recklessly and negligently designing, manufacturing, distributing and selling the saw in a defective and unreasonably dangerous condition;

d. carelessly, recklessly and negligently failing to adequately, properly and safely inspect and/or test the saw and to make the necessary corrections and adjustments thereto, which inspections and tests would have revealed the existence of the aforesaid dangerous condition, and which adjustments and/or corrections would have remedied same;

e. carelessly, recklessly and negligently failing to discover defects in the saw;

f. carelessly, recklessly and negligently failing to exercise the requisite degree of care and caution in the design, manufacture, distribution and sale of the saw;

g. carelessly, recklessly and negligently failing to properly and adequately design and manufacture the saw in order to provide a safe product;

h. carelessly, recklessly and negligently failing to adequately, properly and/or completely supervise its personnel in the design, manufacture, distribution and sale of the saw; and

i. carelessly, recklessly and negligently failing to remove the saw from the market when the defendant knew or should have known of the defects in the saw and that they constituted a danger;

33. As a direct and proximate result of Quaker Lane's breach of its express warranties by designing, manufacturing and selling a product that was in a defective, unreasonably dangerous condition, the injuries and damages referred to above occurred.

**COUNT VI**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(Quaker Lane Tool)**

34. Paragraphs 1 through 27 above are fully incorporated by reference each and every allegation set above as though the same were fully set forth herein at length.

35. Quaker Lane impliedly warranted that the water dispenser was of merchantable quality.

36. Quaker Lane breached its implied warranty of merchantability in:

a. designing, manufacturing, selling and/or otherwise placing into the stream of commerce a saw that was in a defective condition, unreasonably dangerous to consumers, including Joseph Brennan herein;

b. failing to adequately warn Joseph Brennan of the defects in the saw when Quaker Lane knew or should have known of the defects and that they constituted a danger;

c. carelessly, recklessly and negligently designing, manufacturing, distributing and selling the saw in a defective and unreasonably dangerous condition;

d. carelessly, recklessly and negligently failing to adequately, properly and safely inspect and/or test the saw and to make the necessary corrections and adjustments thereto, which inspections and tests would have revealed the existence of the aforesaid dangerous condition, and which adjustments and/or corrections would have remedied same;

e. carelessly, recklessly and negligently failing to discover defects in the saw;

f. carelessly, recklessly and negligently failing to exercise the requisite degree of care and caution in the design, manufacture, distribution and sale of the saw

g. carelessly, recklessly and negligently failing to properly and adequately design and manufacture the saw in order to provide a safe product;

h. carelessly, recklessly and negligently failing to adequately, properly and/or completely supervise its personnel in the design, manufacture, distribution and sale of the saw; and

i. carelessly, recklessly and negligently failing to remove the saw from the market when the defendant knew or should have known of the defects in the saw and that they constituted a danger;

37. As a direct and proximate result of Quaker Lane's breach of its implied warranty of merchantability by designing, manufacturing and selling a product that was in a defective, unreasonably dangerous condition, the injuries and damages referred to above occurred.

WHEREFORE, the Plaintiff, Joseph Brennan, demands judgment in its favor against Defendants, Porter-Cable and Quaker Lane Tools in a monetary amount sufficient to satisfy the jurisdiction of the Court, plus interest, costs and such other and further relief as this Court may deem appropriate.

Plaintiff,
Joseph Brennan,
By his Attorneys:

***D'AMICO • BURCHFIELD, LLP***

/s/ Mark W. Dana, Esq.
Mark W. Dana, Esq. #4150
536 Atwells Avenue
Providence, Rhode Island 02909
(401) 454-1212
(401) 454-1233 – fax

**CERTIFICATION**

I hereby certify that on this 18th day of January, 2007, a true copy of the within document was filed electronically, and is available for viewing and downloading from the ECF system, and copies were sent to all counsel of records via regular mail.

Craig A. Johns, Esq.
Law Office of John T. Madden
475 Kilvert Street, Suite 125
Warwick, RI 02886

C. Russel Bengston, Esq.
One Turks Head Place – Suite 400
Providence, RI 02903

/s/ Mark W. Dana, Esq.